IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

BRANCH BANKING AND
TRUST COMPANY,

                Plaintiff,

v.                                         CIVIL ACTION NO. 3:18-0486

MERIDIAN HOLDING COMPANY, LLC
a West Virginia limited liability company;
GREGORY L. HOWARD, JR.;
ROGER J. HARRIS, JR.; and
MICHAEL C. DRAGOVICH,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Branch Banking and Trust Company's Motion for Attorney's Fees. *Mot. for Fees,* ECF No. 86. Defendants Meridian Holding Company, LLC, Gregory L. Howard, Roger J. Harris, and Michael C. Dragovich did not file a response opposing Plaintiff's Motion; nevertheless, the issues have been adequately presented to the Court and the Motion is ripe for review. For the reasons set forth below, The Court **GRANTS** Plaintiff's Motion and **ORDERS** Defendants to reimburse Plaintiff its reasonable attorney's fees in the amount of $85,035.51.

**I. BACKGROUND**

Although the facts of this case are more fully set out in the Court's earlier Memorandum Opinion and Order addressing Plaintiff's Motion for Summary Judgment, this case—at core—is a straightforward action for breach of contract. *See Branch Banking & Trust Co. v. Meridian Holding Co., LLC*, No. 3:18-0486, 2020 WL 1908490, at *1–3 (S.D.W. Va. Apr. 17, 2020). The

contract at issue is a Promissory Note ("Note") executed in 2008, which provided that Meridian Holding Company, LLC ("Meridian") would repay an $858,276.62 loan from Plaintiff over the course of five years. *See Pl.'s Ex. A*, ECF No. 76-1, at 2–5. Relevant here, the Note also provided that Meridian would be responsible for "all costs of collection, including but not limited to reasonable attorneys' fees incurred by" Plaintiff in the event of default. *Id.* at 4. The individual defendants executed Guaranty Agreements with Plaintiff, in which they "absolutely and unconditionally" guaranteed prompt payment of Meridian's debt to Plaintiff under the Note. *Pl.'s Ex. B*, ECF No. 76-2, at 2–10. The Guaranty Agreements also expressly provided that the individual defendants would be "responsible for . . . all costs and expenses (including reasonable attorneys' fees, if permitted by law) incurred by [Plaintiff] in connection with the enforcement of the Guaranty" and "in connection with its attempts to collect the indebtedness, obligations, and liabilities guaranteed" by the Agreements. *See, e.g.*, *id.* at 3.

Over the following several years, Plaintiff and Defendants executed several modifications to the Note and Guaranty Agreements. *See, e.g.*, *Pl.'s Ex. A*, at 6–22. None of the modifications changed aspects of the original contractual arrangement that were not expressly modified. *See, e.g., id.* at 7 ("It is agreed that except for the modification(s) contained herein, the Promissory Note, and any other Loan Documents or Agreements evidencing, securing, or relating to the Promissory Note and all singular terms and conditions thereof, shall remain in full force and effect."). A final modification provided that the Note would mature on January 5, 2018, *id.* at 19, and on February 7, 2018, Plaintiff's attorneys formally advised Defendants that they had defaulted on the Note. *Pl.'s Ex. O*, ECF No. 76-15, at 2.

This litigation commenced on March 23, 2018, with Plaintiff arguing that Defendants had breached the terms of the Note and Guaranty Agreements. *Compl.*, ECF No. 1, at ¶¶ 13–14.

Defendants responded with a set of five counterclaims, grounded in theories of breach of contract, breach of the duty of good faith and fair dealing, common law fraud and misrepresentation, special duty and negligence, and promissory estoppel. *Am. Counterclaim*, ECF No. 50, at ¶¶ 1–31. They also filed a Third-Party Complaint against State Auto Property and Casualty Insurance Company, Inc., which the Court struck from the docket on November 12, 2019. *Branch Banking & Trust Co. v. Meridian Holding Co., LLC*, No. 3:18-0486, 2019 WL 5957204, at *4 (S.D.W. Va. Nov. 12, 2019). On April 17, 2020, the Court granted Plaintiff's Motion for Summary Judgment on its breach of contract claim and on all of Defendant's counterclaims

> in the principal sum of $614,341.73, plus accrued interest of $9,594.85 through March 22, 2018, and late fees and other charges of $8,065.88, for a total of $632,002.46, together with pre-and post-judgment interest after March 22, 2018 at a per annum rate equal to Plaintiff's Prime Rate, as announced from time to time, plus 5% until paid, *and for Plaintiff's reasonable attorney's fees and costs incurred in attempting to collect the indebtedness due under the Note and Guaranty Agreement.*

*Branch Banking & Trust Co.*, 2020 WL 1908490, at *11 (emphasis added). In reliance on this judgment, Plaintiff filed the instant Motion for Attorney's Fees on May 1, 2020. Appended to the motion is Alexander Macia's Affidavit in support of Plaintiff's requested fees, as well as a billing record of counsel's work on this matter. *See Macia Aff.*, ECF No. 76-1, at 2–5; *Billing Record*, ECF No. 76-1, at 7–19. Although Defendants did not file a response, the Court is prepared to undertake a review of Plaintiff's Motion.

## II. DISCUSSION

"Without . . . express contractual or statutory authorization, courts generally adhere to the American Rule which requires each party to bear its own litigation costs, including attorney's fees." *United Food & Comm. Workers, Local 400 v. Marval Poultry Co.*, 876 F.2d 346, 350 (4th Cir. 1989). Pertinent here, "a federal court sitting in diversity and adjudicating state claims applies

state law in determining whether to allow attorneys' fees so long as the state law does not run counter to a valid federal statute or court rule." *Koontz v. Wells Fargo N.A.*, No. 2:10-cv-00864, 2013 WL 1337260, at *2 (S.D.W. Va. Mar. 29, 2013). In West Virginia, "[a]s a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." *Sally-Mike Properties v. Yokum*, 365 S.E.2d 246, 247, Syl. Pt. 2 (W. Va. 1986); *see also Amaker v. Hammond's Mill Homeowner's Ass'n, Inc.*, No. 15-0203, 2015 WL 6954981, at *9 (W. Va. 2015) (unpublished opinion) ("An award of attorney's fees is appropriate where the document governing the parties' relationship contains a clause allowing for recovery of attorney's fees."). Plaintiff relies on such contractual authority here, and points to clauses in the Note and Guaranty Agreements that provide for "reasonable attorneys' fees" in connection with Defendants' default. *See Pl.'s Ex. A*, at 4; *Pl.'s Ex. B*, at 3. The Court considers this language unambiguous and enforceable, and thus a proper basis for assessing an award of attorney's fees against Defendants. *See Travelers Cas. And Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (reasoning that the American Rule can "be overcome by an 'enforceable contract' allocating attorney's fees").

If the contract provided for assessment of all attorney's fees against Defendants, the Court's analysis would likely end here. *See, e.g.*, *Textron Fin. Corp. v. New Horizon Home Sales, Inc.*, No. 1:10CV39, 2011 WL 901844, at *9–10 (N.D.W. Va. Mar. 15, 2011) (interpreting express contractual provision awarding "attorneys' fees and all other expenses by the Secured Party in enforcing its rights after Debtor's default" as enforceable as written and directing Plaintiff to file its bill of costs with the court). Of course, the contractual provisions at issue here provide only that "reasonable" attorney's fees may be assessed against Defendants. The Court is thus left to consider whether Plaintiff's submitted expenses are, in fact, reasonable.

The Court's analysis proceeds in two parts. "First, the Court must calculate the lodestar by multiplying the 'hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Beattie v. CMH Homes, Inc.*, No. 3:12–2528, 2015 WL 4163337, at *2 (S.D.W. Va. July 9, 2015) (quoting *Bishop Coal Co. v. Salyers*, 380 S.E.2d 238, 248 n.9 (W. Va. 1989)). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Koontz,* 2013 WL 1337260, at *6. Second, the Court will determine whether an upward or downward adjustment of this objective metric is necessary to ensure the fee is reasonable—that is, a fee that is "sufficient to entice competent counsel to take the case, but not so excessive as to provide a windfall to the attorney." *Beattie*, 2015 WL 4163337, at *2.

Here, Plaintiff submits that the total fee of $85,035.51 billed by Spillman, Thomas & Battle, PLLC ("Spillman") is reasonable "in light of the number of parties involved in this matter, the defense against the counterclaim[s] brought against [Plaintiff], and otherwise the complexities presented therein." *Macia Aff.*, at ¶ 7. Of course, the Court's analysis does not begin with this block figure. Instead, an examination of the hourly rates charged by each Spillman employee who played a role in this litigation is necessary. Plaintiff's submitted billing statement reveals the following hourly compensation for its attorneys and paralegals:[1]

*Table 1. Hourly Rates*[2]

|  | *Hourly Rate* | *Hours Worked* | *Total Fee* |
|---|---|---|---|
| *Debra Lee Allen (Member)* | $292.59 | 32.9 hours | $9,626.33 |
| *Corey P. Bonasso (Associate)* | $187.13 | 15.9 hours | $2,975.40 |

---

[1] Fee awards "should compensate the work of paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285 (1989).
[2] This table excludes hours billed by Spillman employees whose time was not actually charged to Plaintiff. Hourly rates are rounded to the nearest cent.

| | | | |
|---|---|---|---|
| *E. Eric Gadd (Member)* | $245.00 | 12.3 hours | $3,013.50 |
| *Travis A. Knobbe (Member)* | $260.00 | 5.6 hours | $1,456.00 |
| *Alexander Macia (Member)* | $300.65 | 106.2 hours | $31,929.68 |
| *James C. Walls (Associate)* | $118.53 | 299.6 hours | $35,510.30 |
| *Christina Dye-Hayes (Paralegal)* | $101.65 | 2 hours | $203.30 |
| *Kristen E. Harrison (Paralegal)* | $110.00 | 1.3 hours | $143.00 |
| *Nicole L. Vike (Paralegal)* | $110.00 | 0.5 hours | $55.00 |
| *Catherine A. Dennis (Paralegal)* | $120.00 | 1 hour | $120.00 |

Having considered these hourly rates, the Court applies its own knowledge of this region's legal market to find that Plaintiff's hourly rates are eminently reasonable for use as lodestar figures as they stand. *See Wolfe v. Green*, No. 2:08-cv-01023, 2010 WL 3809857, at *4 (S.D.W. Va. Sept. 24, 2010) ("In determining the market rate, the court should consider evidence of what attorneys earn for performing similar services in similar circumstances, 'which, of course, may include evidence of what the plaintiff's attorney actually charged his client.'" (quoting *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir.2007)). There are understandable differences in compensation between partners, associates, and paralegals, as well as differences that stem from various discounts applied to the work of particular lawyers and paralegals. Yet the Court has previously calculated lodestar hourly rates for local counsel at even higher levels, *see Beattie*, 2015 WL 4163337, at *3, and sees no basis to arbitrarily lower or raise these rates in this case. "[T]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection," and "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

This is particularly true where—as here—Defendants have submitted no evidence or argument suggesting that these rates are in any way inflated.

Turning to the hours each attorney and paralegal actually devoted to this case, the Court has undertaken a line-by-line review of Spillman's billing statement to determine whether any extraneous items warrant a reduction in the lodestar number of hours worked. Simply put, the billing statement's descriptions are detailed, precise, and directly related to exercising its rights under the Note and Guaranty Agreements.[3] Once again, the Court applies its own knowledge of legal practice in this region (and of legal practice in general) to conclude that the total number of hours worked by each attorney and paralegal in this case—477.3 in total—is objectively reasonable and well-suited for use in calculating a lodestar sum. And as the Court adopts Plaintiff's recorded hourly rates and number of hours worked, that lodestar figure is $85,035.51.

Having determined an appropriate lodestar, the Court will consider whether any upward or downward adjustment in Plaintiff's fees are warranted to render the award reasonable. In doing so, courts consider

> factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[3] If this were a statutory fee-shifting case, the Court would carefully consider whether certain billed activities—for example, preparing for the foreclosure sale of the property secured by the Note—were directly connected to this litigation. Of course, this is not such a case; instead, the fee-shifting arrangement at issue stems from contractual obligations providing that Defendants are liable for fees incurred "in connection with [Plaintiff's] attempts to collect the indebtedness, obligations, and liabilities guaranteed" by the Guaranty Agreements and Note. *See, e.g.*, *Pl.'s Ex. B*, at 3.

*Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 157, Syl. Pt. 4 (W. Va. 1986). The Court will address each factor in turn.

First, a significant amount of time and labor was required to litigate this case. While Plaintiff's underlying breach of contract claim was relatively straightforward, Defendants filed a set of five counterclaims that required Plaintiff to file an Answer along with a Partial Motion to Dismiss. After completing a round of briefing, Defendants filed two motions to amend their counterclaims and file a third-party complaint against State Auto. The Court granted both motions, mooting Plaintiff's pending Motion to Dismiss. All of this occurred alongside extensive discovery, travel, and other proceedings surrounding the foreclosure and sale of the property secured by the Note. The second, third, and fourth *Aetna* factors turn on similar considerations. While the legal questions presented by this litigation were not especially novel or difficult, the procedural complexity certainly necessitated a high degree of skill in litigation and a commitment of time that would preclude work on other matters.

The fifth factor requires the Court to look to the "customary fee" for particular legal work. In his affidavit, Mr. Macia separates the hours and rates billed by each billable employee at Spillman. *See id.* at ¶ 4. The affidavit demonstrates that each member, associate, and paralegal at the firm billed either a standard or discounted rate, with some work going entirely unbilled as a professional courtesy. There is no evidence that Spillman has assessed fees for this litigation greater than it would asses in other litigation; indeed, the opposite appears to be true. And as noted above, the Court's own knowledge of legal practice in this region is sufficient to conclude that Spillman's fees fall well within customary bounds. With respect to the sixth factor, Spillman's bill is based on hourly compensation for the work of its employees. This is only relevant insofar as it would preclude any "contingency enhancement," which in any event is disfavored as a matter of

law. *See Koontz*, 2013 WL 1337260, at \*12. Turning to the seventh factor, it does not appear that Plaintiff placed any restrictions on the amount of time Spillman was able to devote to its case. This factor is similarly of limited usefulness, as the Court has already concluded that each billed hour was reasonable in exercising Plaintiff's rights under the Note and Guaranty Agreements.

The eighth factor is "most critical," and looks to the amount in controversy and the results obtained. *Heldreth v. Rahimian*, 637 S.E.2d 359, 370 (W. Va. 2006). Plaintiff brought this action in order to recover $632,002.46 (in addition to pre- and post-judgment interest), along with attorney's fees. *See Compl.*, at 4. This is a significant sum, and one that would warrant significant litigation expenses. In turn, the result obtained by counsel represented exactly the relief that Plaintiff requested in its Complaint. *Id.* Counsel cannot achieve anything more for their client than they already have—a fact that weighs heavily in the Court's reasonableness assessment. The ninth factor is also significant, as this matter involved the work of four partners, two associates, four paralegals, one summer associate, and at least one litigation support staffer.[4] Combined, this represents a significant pool of experience, reputation, and ability.

The final three factors are not particularly probative in this case, but are worth discussing nonetheless. First, there is nothing particularly undesirable or desirable about this matter; it is a straightforward breach-of-contract action that was complicated by several counterclaims, but that nevertheless involved hourly billing and a routine schedule. The Court cannot speak to the scope or duration of Spillman's relationship with Plaintiff, but the firm has represented Plaintiff since the initiation of this action without the involvement of other attorneys. Finally, the Court is unaware of any cases in West Virginia addressing a similar set of procedural facts or even a similar

---

[4] Spillman did not charge Plaintiff for work completed by the summer associate or litigation support staffer.

contractual fee-shifting provision. *Cf. Koontz*, 2013 WL 1337260, at *11 (noting that "many of the West Virginia cases addressing reasonable attorneys' fees analysis are in the context of civil rights"). For this reason, it is difficult to determine whether this fee comports with fees assessed in like cases. Yet as has already been noted, Plaintiff's hourly rates are well within the bounds of reasonable fees in this District. *See, e.g.*, *Watkins v. Wells Fargo,* No. 3:08–cv–0132, 2010 WL 2486247, at *3 (S.D. W. Va. June 15, 2010).

In sum, each of these factors is either neutral or favorable to Plaintiff in the Court's reasonableness analysis. A reduction in counsel's fee is therefore plainly unwarranted, as nothing suggests that counsel's performance was deficient or that the nature of this suit somehow necessitates a reduction. But the Court also notes that enhancements to a lodestar figure are rarely appropriate, and are reserved for truly exceptional cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (noting that the United States Supreme Court Court has "never sustained an enhancement of a lodestar amount for performance"). Counsel's performance in this case has been capable, but the Court perceives no basis for enhancing Plaintiff's attorney's fees beyond their lodestar sum. Yet a total fee of $85,035.51 is exactly the sort of "reasonable attorneys' fee" that Defendants agreed to pay when they entered into a contractual relationship with Plaintiff, and they are bound to do so now.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Attorney's Fees, ECF No. 86, and **ORDERS** Defendants to reimburse Plaintiff its reasonable attorney's fees in the amount of $85,035.51. Nothing contained in this Memorandum Opinion and Order affects the other relief provided for in the Court's April 17, 2020 Judgment Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

      ENTER:    May 26, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE